**Case No. 13-1604**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

BRIAN W. SEXTON,

                Plaintiff/Appellant

vs.

PANEL PROCESSING, INC., A Michigan
Corporation and PANEL PROCESSING OF
COLDWATER, INC., A Michigan Corporation,

                Defendants/Appellees.

_____

On Appeal from Final Judgment of the United States District Court
For the Eastern District of Michigan - Northern Division (Ludington, Thomas L.)
Civil Action No. 1:12-cv-10946

_____

**Brief of Plaintiff - Appellant Brian Sexton**
_____

WILLIAM A. PFEIFER  (P45263)
Attorney for Plaintiff/Appellant
ISACKSON, WALLACE & PFEIFER P.C.
114 South Second Avenue
Alpena, MI  49707
(989) 354-8242
Fax: (989) 356-3369
Email: bill@alpenalegal.com

## DISCLOSURE OF CORPORATE AFFILIATION
## AND FINANCIAL INTEREST

Appellant Brian Sexton, pursuant to 6th Cir. R. 26.1, makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned company?

**No.**

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

**No.**

Respectfully submitted

  /s/ William A. Pfeifer
WILLIAM A. PFEIFER  (P45263)
Attorney for Plaintiff/Appellant
ISACKSON, WALLACE & PFEIFER P.C.
114 South Second Avenue
Alpena, MI  49707
(989) 354-8242
Fax: (989) 356-3369
Email: bill@alpenalegal.com

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................... ii

STATEMENT OF JURISDICTION ....................................... vi

STATEMENT OF THE CASE .............................................. 1

    A.    INTRODUCTION ................................................. 1
    B.    THE DISTRICT COURT'S DECISION ............................ 2

SUMMARY OF ARGUMENT ............................................ 3

ARGUMENT ................................................................. 5

§510 OF ERISA SHOULD BE INTERPRETED TO PROTECT AN EMPLOYEE WHO RAISES UNSOLICITED COMPLAINT TO MANAGEMENT ................ 5

    A.    §510 Broadly Protects Complaints Made Internally to Management  5

    B.    The Courts are Divided on § 510's Protection of Unsolicited Complaints, but Recent Supreme Court Decisions Support Reading Whistleblower Provisions in Light of the Protective Purposes of the Statute ........................................................... 10

    C.    ERISA Enforcement is Dependent on Employee Complaints, Making the Protection of Unsolicited Complaints under §510 of Critical Importance to the Purposes of the Statute as a Whole ...................... 18

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .................................... 25

CERTIFICATE OF SERVICE ......................................... 26

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ............ 27

# TABLE OF AUTHORITIES

## CASES

Anderson v Elec. Data Sys. Corp., 11 F. 3d 1311 (5th Cir. 1994) ........................ 11

Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 989-90 (7th Cir. 1993) ..... 5

Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926 (11th Cir. 1995) ................... 18

Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 277 F.3d 882, 892 (7th Cir. 2001) ........................................................................................ 17

Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport., Inc., 472 U.S. 559, 572 (1985) .................................................................................................. 24

Clean Harbors Envtl. Servs., Inc. v. Herman, 146 F.3d 12, (1st Cir. 1998) .. 17, 18

Crawford v. Metro. Gov't of Nashville, 555 U.S. 271 (2009) ............................... 14

Dept. of Housing and Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002) ............... 8

Edwards v A.H Cornell & Sons, Inc., 610 F.3d 217 (3rd Cir. 2010) ........... 5, 12-14

Graham Cnty. Soil & Water Conservation Dist. v. United States, 545 U.S. 409 (2005) ............................................................................................................... 17

Hashimoto v Bank of Hawaii, 999 F.2d 408 (9th Cir. 1993) ............... 7, 11, 20, 24

Hatmaker v. Memorial Medical Center, 619 F.3d 741 (7th Cir. 2010) ................. 16

Heath v. Varity Corp., 71 F.3d 256, 258 (7th Cir.1995) ........................................ 6

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) ............. 5, 19, 23, 24

Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 515 (1997) ......................................................................................... 5, 6

iii

Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1330 (2011) ................................................................................ 7, 8, 14-16, 18, 21-23

King v Marriott Int'l, Inc., 337 F.3d 421 (4th Cir. 2003) ................................. 13, 14

Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 904 (2007) ... 20

McBride v. PLM Int'l. Inc., 179 F.3d 737, 744 (9th Cir. 1999) ........................... 23

Neal v. Honeywell Inc., 33 F.3d 860, 863-64 (7th Cir. 1994) ............................. 17

Nicolaou v Horizon Media, Inc., 402 F.3d 325 (2d Cir. 2005) ............................ 13

NLRB v. Scrivener, 405 U.S. 117, 123 (1972) ................................................. 22

Pub. Citizen v. U.S. Dept. of Justice, 491 U.S. 440, 454 (1989) ..................... 9, 21

Reiter v. Sonotone Corp., 442 U.S. 330, 337 (1979) .......................................... 6

River Rd. Hotel Partners, LLC v. Amalgamated Bank, 651 F.3d 642, (7th Cir. 2011) ........................................................................................ 6-8, 18

Sapperstein v. Hager, 188 F.3d 852, 857 (7th Cir. 1999) ...................................... 7

Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983) .......................................... 5

Skidmore v Swift & Co., 323 U.S. 134 (1944) ................................................... 16

Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006) ............. 21

United States v. Gonzales, 520 U.S. 1, 5 (1997) ............................................... 8, 9

## STATUTES AND RULES

28 USC §1291 ................................................................ vi, 1, 5

29 U.S.C. §§ 1001(b) ........................................................ 19

29 U.S.C. §§ 215(a)(3) .................................................... 8, 15, 19

29 USC §1140 ............................................................... vi, 5-7

42 U.S.C. §§ 2000e-3(a) ................................................ 14, 16, 17

MCLA 15.361 et.seq. ......................................................... 1

## MISCELLANEOUS

Black's Law Dictionary 864 (9th ed. 2009) ............................... 8

The American Heritage Dictionary of the English Language 679 (1976) ............. 8

Webster's Ninth New Collegiate Dictionary 624 (1986) ....................... 8

## STATEMENT OF JURISDICTION

This is a action originally filed under Michigan's Whistleblowers' Protection Act. Plaintiff's removed the matter to the United States District Court for the Eastern District of Michigan and filed a Motion for Summary Summary Judgment claiming they were entitled to Judgment as a matter of law because Plaintiff's state Whistleblowers' Claim was preempted by ERISA. Subject matter jurisdiction in the District Court was based on §510 of the Employee Retirement Income Security Act of 1974, 29 USC §1140. The basis of jurisdiction in the Court of Appeals is 28 USC §1291. An Opinion and Order Granting in Part Defendants' Motion for Summary Judgment and Declining Jurisdiction Over Plaintiff's State Law Case and a Judgment were entered on October 30, 2012 (RE 16 Opinion and Order, RE 17, Judgment). Plaintiff's time for filing his Appeal was tolled pursuant to FRAP Rule 4(a)(4)(A)(ii) and (iv) by Defendant's filing of a Motion for Reconsideration on November 13, 2012 (RE 20, Defendant's Motion for Reconsideration and the entry of the Court's Opinion and Order Denying Defendant's Motion for Reconsideration on April 12, 2013 (RE 21, Opinion and Order). Notice of Appeal was timely filed in the Eastern District of Michigan, Northern Division on May 6, 2013 (RE 22, Notice of Appeal).

## STATEMENT OF ISSUE PRESENTED

Whether §510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1140, protects from retaliation an employee who raises unsolicited complaints to management regarding possible ERISA violations.

## STATEMENT OF THE CASE

### A.  INTRODUCTION:

Brian Sexton ("Appellant") is a former employee of Panel Processing Inc. and Panel Processing of Coldwater, Inc. (collectively "Panel Processing" or "Apellees").  He filed suit against Panel Processing in the 26th Circuit Court for the County of Alpena, Michigan alleging that he was discharged in violation of Michigan's Whistleblower Protection Act, MCLA 15.361 et.seq. ("MWPA"), for violations of ERISA and the Michigan Business Corporations Act and potential violations of other state and federal law.  His claim was not limited in Count I to a violation of ERISA law as set forth in Appellees' Motion for Summary Judgment (RE 9 Defendants' Motion for Summary Judgment.  Plaintiff/Appellant Brian Sexton filed his response to the Motion for Summary Judgment on July 24, 2012 (RE 13 Plaintiff's Response to Defendants' Motion for Summary Judgment). Appellant complained as part of his Count I that there was a violation of the Employee Retirement Income Security Act ("ERISA") pertaining to an Employee Stock Ownership Plan ("ESOP") and violations of the Michigan Business Corporations Act.

Appellant's claim should not have been dismissed simply because of the premption doctrine as it relates to ERISA.  Furthermore, Appellant's Claim under

the MWPA only requires a good faith belief that a violation of federal or state law occurred and that Appellant took action toward reporting such violation.

Appellant's claims for breach of implied contract and MWPA should not be dismissed as he was not allowed discovery on the issue to attempt to establish his claim for breach of an implied employment contract and MWPA violations.

## B.    THE DISTRICT COURT'S DECISION

The district court issued an Order dated October 30, 2012, granting Defendants' motion for summary judgment on Brian Sexton's ERISA § 510 claim. Sexton v. Panel Processing, Inc and Panel Processing of Coldwater, Inc., No. 1:12-cv-10946-TLL-CEB, (RE 16, E.D. Michigan, October 30, 2012). The district court recognized a split in the circuits with respect to whether unsolicited internal complaints are protected activity under §510.   Defendants/Appellees Panel Processing filed a Motion for Reconsideration of the Court's Opinion and Order on November 13, 2012 and the Court denied Defendants' Motion on April 12, 2013.

Appellant Brian Sexton filed the present appeal on May 5, 2013.

## SUMMARY OF ARGUMENT

The district court erred in holding that ERISA § 510 protects only complaints made in response to a request for information. As consistently construed by the Secretary of Labor (and previously held by the Fifth, Seventh and Ninth Circuits), this broadly-worded provision should be interpreted to prevent retaliation against employees who raise complaints or give other ERISA-related information, whether to corporate management or a government agency. In particular, §510's protection of "information" given in "any inquiry" is ambiguous, and the Secretary's and other Circuit's permissible interpretation is entitled to deference. Indeed, only this interpretation respects Congressional intent and promotes ERISA's enforcement objectives.

Moreover, the Supreme Court and the Seventh Circuit have interpreted the anti-retaliation provision of the Fair Labor Standards Act as protecting unsolicited employee complaints, and similar reasoning is justified when interpreting § 510's differently worded but equally protective anti-retaliation provision. Anti-retaliation provisions such as § 510 are designed to encourage employees to report potential violations, starting with the employer, and assure the cooperation on which accomplishment of ERISA's protective purposes depends. Only by protecting unsolicited employee inquiries and complaints do whistleblower protection

provisions help avoid the chilling effect of preemptive retaliation, where an employee is fired or otherwise disciplined before having the chance to initiate a formal proceeding.

If unsolicited complaints or inquiries do not receive protection, employee participants and fiduciaries will inevitably be stymied in their efforts to address and resolve problems related to their employee benefit plans. Employees will be required to await a "request for information" to be protected from punitive treatment; meanwhile, legitimate complaints and inquiries about the employees' plans and potential ERISA violations will have gone unaddressed. In the process, ERISA enforcement, which depends on employees coming forward with complaints without fear of retaliation, will likewise be stymied, contrary to Congressional intent. Thus, to avoid fostering a work environment that risks punishing employees for helping fulfill ERISA's protective purpose, and thereby frustrating effective enforcement of ERISA, this Court should interpret §510 to protect employees from retaliation for making unsolicited complaints.

# ARGUMENT

## §510 OF ERISA SHOULD BE INTERPRETED TO PROTECT AN EMPLOYEE WHO RAISES UNSOLICITED COMPLAINT TO MANAGEMENT.

### A.    §510 Broadly Protects Complaints Made Internally to Management

1. "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit programs." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); see Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 989-90 (7th Cir. 1993). "As part of [ERISA's] closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990), quoting S. Rep. No. 93-127, at 36 (1973). ERISA's anti-retaliation provision, §510, 29 U.S.C. §§ 1140, is prominent among these safeguards. Ingersoll-Rand Co., 498 U.S. at 137; Edwards v A.H Cornell & Sons, Inc., 610 F.3d 217 at 227 (3rd Cir. 2010) (Cowen, J., dissenting) ("this anti-retaliation provision plays a very important and even essential role in the proper implementation of the whole ERISA scheme because it actually 'helps to make [ERISA's] promises credible" ') (citing Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.,

520 U.S. 510, 515 (1997) (quoting <u>Heath v. Varity Corp.</u>, 71 F.3d 256, 258 (7th Cir.1995)).

In pertinent part, § 510 provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against any person because he has <u>given information or has testified or is about to testify in any inquiry or proceeding relating to</u> this Act or the Welfare and Pension Plans Disclosure Act.
29 U.S.C. §§ 1140 (emphasis added).

The district court decided that unsolicited internal complaints are not protected under this provision. The question before this Court, therefore, is whether this constricted construction is dictated by the plain meaning of the statute, or whether it can also be permissibly read to cover unsolicited complaints made internally to management.

In reviewing the court's interpretation of the statute, "the starting point must be the language employed by Congress." <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 337 (1979). Moreover, "[w]hen interpreting statutory language, the meaning attributed to a phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.'" <u>River Rd. Hotel Partners, LLC v. Amalgamated Bank</u>,

651 F.3d 642, 649 (7th Cir. 2011) (quoting <u>Kasten v. Saint-Gobain Performance</u> <u>Plastics Corp.</u>, 131 S.Ct. 1325, 1330 (2011)).

2. §510 employs broad language to protect employees from retaliation, and liberally interpreting these protections is consistent with statutory construction principles. <u>Hashimoto v Bank of Hawaii</u>, 999 F.2d 408 at 411 (9th Cir. 1993) (§ 510 "is clearly meant to protect whistle blowers. It may be fairly construed to protect a person in Hashimoto's position if, in fact, she was fired because she was protesting [through unsolicited complaints] a violation of law in connection with an ERISA plan."); <u>cf.</u> <u>Sapperstein v. Hager</u>, 188 F.3d 852, 857 (7th Cir. 1999) ("the remedial nature of [the Fair Labor Standards Act] further warrants an expansive interpretation of its provisions") (citation omitted). Broadly construed, § 510's protection for "any person" who has "given information . . . in any inquiry" encompasses a plan participant's complaints about alleged wrongdoing to corporate or plan officials directly or indirectly responsible for plan management, or to a government agency responsible for enforcing ERISA, and, indeed, the receipt of such complaints will generally trigger a corresponding duty to investigate. It is, therefore, completely natural to interpret "information" given in an "inquiry" to include unsolicited complaints.

"[R]eading the whole statutory text, considering the purpose and context of the statute," Kasten, 131 S. Ct. at 1330, is all the more important here because ERISA does not itself define any of the key terms employed in § 510, including the pivotal statutory term — "inquiry." See River Rd. Hotel Partners, 651 F.3d at 649 (stating that "'we give words their ordinary meaning unless the context counsels otherwise'") (citation omitted). As commonly understood, however, "inquiry" encompasses any "request for information." Black's Law Dictionary 864 (9th ed. 2009); see, e.g., The American Heritage Dictionary of the English Language 679 (1976); Webster's Ninth New Collegiate Dictionary 624 (1986). This broad definition does not connote any particular level of formality, but in juxtaposition with the companion term "proceeding," and as modified by the all-encompassing term "any," it is clear that Congress intended "inquiry" to be given its broadest possible construction. See Dept. of Housing and Urban Dev. v. Rucker, 535 U.S. 125, 131 (2002) ("As we have explained, 'the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'") (quoting United States v. Gonzales, 520 U.S. 1, 5 (1997)). Moreover, an "inquiry" of "whatever kind" necessarily includes an "inquiry" in either a governmental or non-governmental (employer or plan) setting, as the basic dictionary definition does not confine

"inquiry" to any particular setting, and §510 does not limit "any inquiry" based on any such distinction.

Given the broad protection afforded under 510, the salient question whether this provision prohibits retaliation against employees whose complaints are unsolicited should be answered in the affirmative. §510's lack of distinction between a governmental and non-governmental "inquiry" is highly significant because it leaves no principled basis to say that unsolicited complaints are protected when given to government officials, but not to workplace officials. And to construe unsolicited complaints to be unprotected activity in both settings would leave a gaping hole in §510's protective scope that defies the ordinary canons of statutory construction as well as common sense. See Pub. Citizen v. U.S. Dept. of Justice, 491 U.S. 440, 454 (1989) ("Where the literal reading of a statutory term would 'compel an odd result,' . . . , we must search for other evidence of congressional intent to lend the term its proper scope.") (citation omitted).

There is no logical reason to suppose that Congress expected retaliation against a person who provides solicited information to be unlawful, and retaliation against a person who provides unsolicited information to be lawful. In both government and non-government contexts, information (whether in the form of a complaint, a statement of fact or opinion, or a question regarding plan

interpretation or statutory rights) may be given in response to a directed request from someone in authority; but it may also be given without being asked, in anticipation of such request or because the government agency, company, or plan is presumed generally to invite such information in order to carry out their responsibilities.

To state the obvious, retaliation has the same adverse and chilling effect in both the solicited and unsolicited scenarios; and without a clear statement drawing a line between the two, someone volunteering information without being asked would reasonably expect to be afforded the same protections as someone who does the same thing after being asked. Indeed, the purported distinction in the two acts becomes completely blurred when, for instance, the response to a request goes beyond the scope of the request, or where the standing law of the workplace encourages employees to come forward with complaints or engage in informal dispute resolution. Thus, §510 can and should rationally be read to encompass any employee-generated request that corporate or plan management, as well as the government, take action to forestall or correct ERISA problems.

**B. The Courts are Divided on § 510's Protection of Unsolicited Complaints, but Recent Supreme Court Decisions Support Reading Whistleblower Provisions in Light of the Protective Purposes of the Statute**

10

1. While a novel question in this Court, six courts of appeals are divided on the question presented concerning §510's coverage of <u>unsolicited</u> internal complaints. It should be noted, however, that all the courts are in agreement that "inquiry" is not limited to government inquiries.

The Fifth, Seventh and Ninth Circuits correctly concluded that §510 protects unsolicited internal complaints. <u>Hashimoto</u>, <u>supra</u>, involved a plaintiff who alleged she was discharged after complaining to management about alleged ERISA violations. The complaints were not made in response to inquiries by management. In holding that §510 "is clearly meant to protect whistleblowers" who, unsolicited, "protest[] a violation of law in connection with an ERISA plan," the Ninth Circuit stated:

The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan. If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: anticipatory discharge discourages the whistle blower before the whistle is blown. 999 F.2d at 411.

In <u>Anderson v Elec. Data Sys. Corp.</u>, 11 F.3d 1311 (5th Cir. 1994), the Fifth Circuit similarly found that §510 protects persons who make unsolicited ERISA-related complaints to management. The court determined that the plaintiff's allegation that

he was discharged because he reported ERISA violations to management and refused to commit such violations fell "squarely within the ambit of ERISA §§ 510." 11 F.3d at 1314.

Furthermore, Judge Cowen's dissent in Edwards, 610 F.3d at 226-31 (Cowen, J., dissenting), the recent Third Circuit case addressing this issue, articulates perhaps the best judicial rationale for these holdings. Characterizing the majority's opinion that §510's "inquiry" clause has a plain meaning precluding the protection of unsolicited internal complaints to be "questionable at best," id. at 228, Judge Cowen considered the §510 anti-retaliation provision to be ambiguous, in part because the majority's "unsustainable interpretation" left "totally unprotected a certain category of conduct . . . that the remedial statutory provision was enacted to protect in the first place." Id. at 226-27. He further rightly observed that the majority's ruling could permit or even encourage an employer "to fire an employee immediately after she makes an informal complaint instead of conducting an investigation." Id. at 228. Judge Cowen also concluded that the terms "given information" and "inquiry" as used in the statute "appear[] to be even broader" than other anti-retaliation statutes that courts have found to protect unsolicited complaints. Id. at 230-31 (citing the Clean Water Act and the Fair Labor Standards Act).

2. In contrast, three Circuits have taken a more restricted, and purportedly more "textual," view of §510. For the reasons set forth above, the Appellant strongly disagrees that theirs is a necessary or better reading of the statute.

Most recently, the Third Circuit in <u>Edwards</u>, <u>supra</u>, held that unsolicited internal complaints are not protected activity under §510. The <u>Edwards</u> majority (over Judge Cowen's vigorous dissent) largely relied on the Fourth Circuit's holding in <u>King v Marriott Int'l, Inc.</u>, 337 F.3d 421 (4th Cir. 2003) that the §510 phrase "testified or is about to testify" supports limiting an "inquiry or proceeding" to "more formal actions." <u>Edwards</u>, 610 F.3d at 223 (citing <u>King</u>, 337 F.3d at 427). <u>King</u>'s reasoning, however, is unpersuasive because it failed to differentiate between "inquiry" and "proceeding," and did not adequately consider the scope of "given information" (as opposed to "testify"); <u>cf.</u> <u>Nicolaou v Horizon Media, Inc.</u>, 402 F.3d 325 at 329, 330 & n.3 (2d Cir. 2005) (stating that §510's "reference to testimony is wholly irrelevant to our understanding of the language 'given information . . . in any inquiry or proceeding'"). The Second Circuit, in <u>Nicolaou</u>, gave § 510 a broader interpretation than the Third and Fourth Circuits and found that information given at a meeting set up by company officials was protected, but, given the facts of the case, was not required to decide whether § 510 protects entirely unsolicited complaints. None of these decisions, therefore, fully and

adequately considered "the whole statutory text, considering the purpose and context of the statute and . . . any precedents or authorities that inform the analysis." <u>Kasten</u>, 131 S. Ct. at 1330.

3. The ERISA decisions also did not have the benefit of the recent Supreme Court <u>Kasten</u> decision. <u>Kasten</u>, 131 S.Ct. 1325, <u>supra</u>. Moreover, <u>Edwards</u> overlooked the Supreme Court's <u>Crawford</u> decision of the year before, which should have informed its analysis and limited the influence of the <u>King</u> decision on the Third Circuit's reasoning. <u>Crawford v. Metro. Gov't of Nashville</u>, 555 U.S. 271 (2009).

In <u>Crawford</u>, the Supreme Court interpreted the "opposition" clause of Title VII's anti-retaliation provision, which makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by [Title VII]." 42 U.S.C. §§ 2000e-3(a). The Court stated that "a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." <u>Crawford</u>, 555 U.S. at 277-78. Thus, while holding that "responding to someone's question" is protected "opposition" activity, the Court also indicated that

"provoking the discussion" and "report[ing] discrimination on her own initiative" was also protected as opposition to unlawful activity. A similarly broad construction should be applied to ERISA's protection for "information given . . . in any inquiry," since that formulation no more suggests protecting only responses to requested information than does "opposed any practice" suggest protecting only unsolicited provocations.

Kasten, by contrast, involved the anti-retaliation provision of the Fair Labor Standards Act, which prohibits, *inter alia*, retaliation "against any employee because such employee has filed any complaint." FLSA § 15(a)(3), 29 U.S.C. §§ 215(a)(3). The case came to the Supreme Court from a decision of this Court, Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834 (7th Cir. 2009), holding that this language protects written, but not oral, internal complaints. On review, the Supreme Court partially reversed and vacated the court's judgment and held that § 15(a)(3) protects both oral and written complaints.  After concluding that the term "filed" is ambiguous, the Court rested its holding on "[s]everal functional considerations," including not wanting to undermine basic FLSA objectives or enforcement. Kasten, 131 S.Ct. at 1333. The Court observed that effective FLSA enforcement depended upon "information and complaints received from employees seeking to vindicate rights claimed to have been denied." Id. It

further stressed that limiting protection to written complaints could "take needed flexibility from those charged with the Act's enforcement" by "prevent[ing] Government agencies from using hotlines, interviews, and other oral methods for receiving complaints." Id. at 1334. Finally, the Court recognized the government's long-held view that the phrase "filed any complaint" protected both oral and written complaints, and granted it judicial deference. Id. at 1335 (citing Skidmore v Swift & Co., 323 U.S. 134 at 140 (1944)).

4. Informed by fundamental policy considerations and close textual analysis, the Supreme Court has thus broadly construed the anti-retaliation provisions to two of the most important federal employment statues, Title VII and the FLSA, extending protections to internal complaints that had been denied by the lower courts. These Supreme Court decisions provide a better model to follow in the present case than the Court's ruling in Hatmaker v. Memorial Medical Center, 619 F.3d 741 (7th Cir. 2010). In Hatmaker, the Court construed the term "investigation" in the part of Title VII's anti-retaliation provision that makes it unlawful to "discriminate against any employee . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §§ 2000e-3(a). The Court held that an employee's comments made during an internal investigation were not protected

under this provision, reasoning that a "purely internal investigation" is not an "official investigation[]" because it "does not involve a 'charge,' or testimony, and neither is it a 'proceeding' or a 'hearing.'" 619 F.3d at 747. This case is distinguishable, however, because <u>Hatmaker</u> had no occasion to construe what giving "information" in "any inquiry" encompasses, as those terms do not appear in Title VII. <u>See</u> <u>Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.</u>, 277 F.3d 882, 892 (7th Cir. 2001) ("borrow[ing] aspects of Title VII law to use in interpreting ERISA . . . must be done with caution, as there are significant differences between ERISA and Title VII, and there are even differences between the anti-retaliation provisions of the two statutes").

Indeed, <u>Hatmaker</u> stands as an exception to the general trend in the courts. When interpreting a broad range of retaliation statutes, courts, including the Seventh Circuit, have repeatedly extended protection beyond external complaints and protected internal complaints. <u>See</u> <u>Neal v. Honeywell Inc.</u>, 33 F.3d 860, 863-64 (7th Cir. 1994) (ruling that False Claims Act whistleblower provision protects employee "supplying information that set off an investigation") (<u>abrogated on other grounds by</u> <u>Graham Cnty. Soil & Water Conservation Dist. v. United States</u>, 545 U.S. 409 (2005); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Clean Harbors Envtl. Servs., Inc. v. Herman</u>, 146 F.3d 12, 19 (1st Cir. 1998) (holding that internal oral and written complaints

are protected under Safety Transportation Assistance Act, and stating that "[w]e reject company's interpretation that STAA anti-retaliation protection is available only to employees who file complaints with a government agency or a court"); Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926 (11th Cir. 1995) (holding that internal complaints are protected activity under Energy Reorganization Act); Phillips v. Interior Bd. of Mine Operations Appeals, 500 F.2d 772 (D.C. Cir. 1974) (protecting internal complaints under Mine Safety Act).

Accordingly, in the ERISA context, not only does "reading the whole statutory text, considering the purpose and context of the statute," support the Appellant's construction that unsolicited complaints are protected by § 510 as "information given . . . in an inquiry," but "consulting any precedents or authorities that inform the analysis" also, on balance, leads to the same conclusion. Kasten, 131 S. Ct. at 1331; accord River Rd. Hotel Partners, 651 F.3d at 649.

## C. ERISA Enforcement is Dependent on Employee Complaints, Making the Protection of Unsolicited Complaints under §510 of Critical Importance to the Purposes of the Statute as a Whole

1. The overarching purpose of ERISA is "to protect interstate commerce and interests of participants in employee benefit plans and their beneficiaries . . . by

providing for appropriate remedies, sanctions, and ready access to the federal courts." 29 U.S.C. §§ 1001(b). §510 is critical to achieving the "interests of participants in employee benefit plans," as the Supreme Court has recognized. <u>Ingersoll-Rand Co.</u>, 498 U.S. at 137. And the legislative history of this anti-retaliation provision makes clear that "[t]he enforcement provisions have been designed specifically to provide . . . participants and beneficiaries with broad remedies for redressing or preventing violations [of ERISA]." S. Rep. No. 93-127, at 35 (1973), <u>reprinted in</u> 1974 U.S.C.C.A.N. 4838, 4871. The dual emphasis on prevention and redress reflects that Congress intended ERISA to encourage employees to come forward with information bearing on plan management and §510 to protect them when they do.

§510's remedial goals are naturally frustrated, and prevention goals undermined, if the term "inquiry" is interpreted in a manner that forces employees to wait for employer prompting before reporting alleged violations. Participants cannot help prevent violations — and thus ERISA cannot be adequately enforced — if participants cannot bring to management their complaints and other information relating to ERISA without fear of retaliation, including termination of employment (and the non-vested employee benefits that employment entails); at a minimum, serious problems could go uncorrected while otherwise willing

participants are deterred from raising legitimate complaints unless personally invited.

Even if "inquiry" is more narrowly interpreted, an employee's complaint can be viewed as the necessary first step triggering the inquiry. Hashimoto, 999 F.2d at 411. Especially where an employee makes a complaint or otherwise gives information to corporate officers or plan fiduciaries who have a duty to inquire into complaints and allegations of wrongdoing, the unsolicited information supplied by an employee is part and parcel of the ensuing process. If "inquiry" is narrowly interpreted to exclude such initial complaints, employers could readily circumvent § 510 by postponing proceedings or disregarding complaints. Even if formal proceedings were finally instituted, the whistleblower who serves as the catalyst for the proceedings would be wholly unprotected. In many cases, that person is the most likely target of retaliation and the one in greatest need of protection.

The district court's interpretation that internal complaints are not protected creates — and encourages employers to create — a trap for unwary employees who comply with company internal complaint procedures only to find themselves facing retaliation for having initiated such procedure, or having voiced complaints more informally preliminary to using that procedure. See Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 904 (2007) (holding that statutory

20

interpretation is "flawed" if it "creat[es] legal distinctions that operate as traps for the unwary"). Indeed, under such a cramped reading of §510, fiduciaries who are employees would be placed in the untenable position of risking their jobs if, by fulfilling their statutory obligations to monitor plans and investigate the prudence of actions taken with respect to those plans, they provoke their employment bosses to retaliate. Which is exactly what happened to Appellant Sexton upon complaining to his boss and CEO of the Defendants/Appellees. An interpretation of §510 that yields these results defies commonsense, and, therefore, should be avoided. See Pub. Citizen, 491 U.S. at 454 (stating that courts avoid constructions that produce "odd" or "absurd results").

Moreover, given the vast number of plan participants covered by ERISA, the Plans must rely on plan participants or beneficiaries to alert plan fiduciaries, plan sponsors, and the Department to potential violations — a task they could not (or would not) perform without protection from retaliation throughout the process. See Kasten, 131 S. Ct. at 1325 (protecting oral complaints under the FLSA); see also Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006) (agreeing with plaintiff's assertion under Title VII that "obviously, the filing of a charge of discrimination" constitutes protected activity) (citations and quotations omitted).

21

Employees are encouraged to report ERISA violations to the Department of Labor. For example, in addition to a recently created web page for submitting online complaints, the Employee Benefits Security Administration (EBSA) maintains national and field offices where individuals can call concerning alleged ERISA violations and speak with EBSA Benefit Advisors. EBSA receives thousands of phone calls each year on its toll-free hotline. Under the district court's reasoning, however, individuals calling EBSA to report violations would not be protected from retaliation because their complaints are unsolicited. By discouraging such complaints, this narrow interpretation undermines what the Supreme Court in Kasten recognized as pivotal to government enforcement generally. See Kasten, 131 S. Ct. at 1334 (relying on precedent under the National Labor Relations Act, a "related statute," to support its view that construction of the FLSA's anti-retaliation provision should be informed by its "enforcement need[]" for broad employee protection) (citing NLRB v. Scrivener, 405 U.S. 117, 123 (1972)).

Given the strong federal policy favoring both internal dispute resolution and complaint-based government enforcement, it is highly doubtful that Congress intended to take away or leave out this fundamental protection for unsolicited pre-investigation information when it chose to use the phrase "give[] information . . . in

any inquiry or proceeding." <u>Cf.</u> <u>Kasten</u>, 131 S. Ct. at 1333-34 (noting the importance of employee complaints to the enforcement scheme and holding that excluding internal complaints from anti-retaliation protection would "discourage the use of desirable informal workplace grievance procedures"). Instead, §510's legislative history emphasizes that "[t]he enforcement provisions [of §510] have been designed specifically to provide . . . participants and beneficiaries with broad remedies for redressing or preventing violations [of ERISA]," S. Rep. No. 93-127 (1973), and "indicates that 'Congress viewed [the whistleblower provision] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits." ' <u>McBride v. PLM Int'l. Inc.</u>, 179 F.3d 737, 744 (9th Cir. 1999) (quoting <u>Ingersoll-Rand Co.</u>, 498 U.S. at 143); <u>see</u> <u>Ingersoll-Rand Co.</u>, 498 U.S. at 137 (quoting legislative history) (emphasis added) (§ 510 is intended "'to <u>completely</u> secure the rights and expectations brought into being by this landmark reform legislation.'"). Thus, just as the first call or letter to DOL is protected activity under §510, so too should the first oral or written communication to management be protected, whether solicited or not.

2. The "functional considerations" that provided the ultimate basis for the <u>Kasten</u> ruling readily transfer to the present case. <u>Kasten</u>, 131 S. Ct. at 1333. Appellant Sexton's internal complaints sought to remedy misconduct jeopardizing

his own benefits. Specifically, the complaints concerned Defendants'/Appellees' failure to seat validly elected directors to the Board. Id. Leaving his unsolicited complaints unprotected would thus undermine effective ERISA enforcement and contravene legislative intent in the very manner decried by the Supreme Court. Id.; see Ingersoll-Rand Co., 498 U.S. at 143 ("Congress viewed [the whistleblower provision] as a crucial part of ERISA because, without it, employers would be able to circumvent the provision of promised benefits.").

For this reason, the Ninth Circuit's "first step" analysis is particularly appropriate in the circumstances of this case. Hashimoto, 999 F.2d at 411. The allegation here is that Panel Processing, Inc retaliated against Brian Sexton by terminating him after he complained to various officials, who were in a position to exercise authority over the Employee Stock Ownership Plan ("ESOP"). Complaints of this nature trigger a fiduciary duty to investigate and to take action to ensure that the plan is administered correctly. See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transport., Inc., 472 U.S. 559, 572 (1985) ("ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries.").

24

## CONCLUSION

For the reasons set forth above, this Court should reverse the district court's

decision granting defendants' motion for summary judgment on Brian Sexton's

ERISA §510 claim.

Dated: July 11, 2013

Respectfully Submitted,

 /s/ William A. Pfeifer
William A. Pfeifer (P45263)
Attorney for Plaintiff/Apellant
Isackson, Wallace & Pfeifer, PC
114 S. Second Avenue
Alpena, MI 49707

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.    This brief complies with the type-volume limitation of Fed.R. App P. 32(a)(7)(b) because this brief contains 5,236 words, excluding the parts of the brief exempted by Fed.R. App. P 32(a)(7)(B)(iii)

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using WordPerfect 9, Times New Roman, 14 point font.

Dated: July 12, 2013

 /s/ William A. Pfeifer
William A. Pfefier (P45263)
Attorney for Plaintiff/Apellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 12, 2013, the foregoing Brief of Plaintiff - Appellant Brian Sexton was served by Electronic Mail upon the following

Steven J. Fishman
Bodman, PLC
sfishman@bodmanlaw.com

Donald H. Scharg
Bodman PLC
dscharg@bodmanlaw.com

David Malinowski
Bodman PLC
dmalinowski@bodmanlaw.com

Stephen Silverman
U.S. Dept. of Labor
silverman.stephen@dol.gov

/s/ Linda A. Albright
Linda A., Albright
Legal Assistant to William A. Pfeifer
114 S. Second Avenue
Alpena, MI 49707
(989) 354-8242

26

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

RE 9          Defendants' Motion for Summary Judgment (June 26, 2012)

RE 13        Plaintiff's Response to Defendants' Motion for Summary Judgment (July 24, 2012)

      RE 13-2        Affidavit of Brian Sexton (July 24, 2012)

      RE 13-3        Bylaws of Panel Processing, Inc. in Brian Sexton's possession

RE 16        Opinion and Order Granting in Part Defendants' Motion for Summary Judgment and Declining Jurisdiction over Plaintiffs' Statte Law Claim (October 30, 2012)

RE 17         Judgment    (October 30, 2012)

RE 20        Defendant's Motion for Reconsideration (November 13, 2012)

RE 21        Opinion and Order Denying Defendants' Motion for Reconsideration (April 12, 2013)

RE 22        Notice of Appeal (May 6, 2013)