No. 13-1604
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

BRIAN SEXTON,
Plaintiff-Appellant,

v.

PANEL PROCESSING, INC., et al,
Defendants-Appellees.
_____

On Appeal from the United States District Court
for the Eastern District of Michigan
_____

BRIEF OF THE SECRETARY OF LABOR AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFF-APPELLANT
URGING REVERSAL AND REMAND
_____

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor
Plan Benefits Security

NATHANIEL I. SPILLER
Counsel for Appellate
and Special Litigation

STEPHEN A. SILVERMAN
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., N.W., N-4611
Washington, D.C.  20210
(202) 693-5623

# TABLE OF CONTENTS

Table of Authorities ............................................................................. iii

Question Presented.................................................................................1

Statement of Interest .............................................................................1

Statement of the Case............................................................................2

      1.    Statement of facts. ................................................................2

      2.    District Court decision. .........................................................5

Summary of the Argument....................................................................6

Argument...............................................................................................9

      Section 510 Protects From Retaliation Employees Who Make Unsolicited Complaints to Management Relating to ERISA ............................................9

    A.    Section 510's Ambiguous Language Should Be Broadly Construed in Favor of Protecting Employees' Informal Complaints ....................9

    B.    The Secretary's Construction of Section 510 is Consistent with Sixth Circuit and Supreme Court Precedents Broadly Interpreting the Coverage of Other Anti-Retaliation Statutes, and with the Most Recent and Better Reasoned Court of Appeals Decision Regarding ERISA's Protection of Unsolicited Complaints. ................................23

        1.    Sixth Circuit Precedent. ............................................23

        2.    Supreme Court Precedent. ........................................25

        3.    Other Circuit Precedent.............................................27

## TABLE OF CONTENTS-(cont'd)

CONCLUSION ....................................................................................................... 30

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Federal Cases:**

Am. Nuclear Resources, Inc. v. U.S. Dep't of Labor,
134 F.3d 1292 (6th Cir. 1992).............................................................25

Anderson v. Elec. Data Sys. Corp.,
11 F.3d 1311 (5th Cir. 1994)................................................... 1, 28, 29

Auer v. Robbins,
519 U.S. 452 (1997) ...........................................................................21

Authier v. Ginsberg,
757 F.2d 796 (6th Cir. 1985)........................................... 10, 11 n.4, 18

Burlington N. & Santa Fe Ry. Co. v. White,
548 U.S. 53 (2006) ..................................................................... 11, 13

Casias v. Wal-Mart Stores, Inc.,
695 F.3d 428 (6th Cir. 2012)......................................................... 12, 13

Chao v. Occupations Safety & Health Review Commission,
540 F.3d 519 (6th Cir. 2008)..............................................................22

Coomer v. Bethesda Hosp., Inc.,
370 F.3d 499 (6th Cir. 2004)..............................................................16

Crawford v. Metro. Gov't of Nashville,
555 U.S. 271 (2009) ............................................................. 8 & passim

Dunlop v. Carriage Carpet Co.,
548 F.2d 139 (6th Cir. 1977)..............................................................24

Dunn v. ELCO Enters., Inc.,
2006 WL 1195867 (E.D. Mich. May 4, 2006)............................. 23 n.8

Edwards v. A.H. Cornell & Son Inc.,
610 F.3d 217 (3d Cir. 2010) (Cowen, J., dissenting) ............................ 2 & passim

**Federal Cases--(cont'd):**

EEOC v. Ohio Edison Co.,
   7 F.3d 541 (6th Cir. 1993) ........................................................ 8, 23, 24

EEOC v. Romeo Cmty. Schools,
   976 F.2d 985 (1992) ................................................................ 8, 24, 25

George v. Junior Achievement of Cent. Ind., Inc.,
   694 F.3d 812 (7th Cir. 2012) ................................................... 1 & passim

Gregg v. Transp. Workers of Am. Int'l,
   343 F.3d 833 (6th Cir. 2003) ...................................................... 10

Haley v. Retsinas,
   138 F.3d 1245 (8th Cir. 1998) ..................................................... 13

Hashimoto v. Bank of Hawaii,
   999 F.2d 408 (9th Cir. 1993) ................................................... 2, 18, 28

Hayes v. City of Memphis,
   23 Fed. App'x 529 (6th Cir. 2001) ................................................ 24

Hill v. Mr. Money Finance Co. & First Citizens Banc Corp.,
   309 Fed. App'x 950 (6th Cir. 2009) ............................................... 13

Ingersoll-Rand Co. v. McClendon,
   498 U.S. 133 (1990) ............................................................. 10, 11

Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.,
   520 U.S. 510 (1997) ............................................................... 10

Jones v. Tennessee Valley Auth.,
   948 F.2d 258 (6th Cir. 1991) ...................................................... 25

Kasten v. Saint-Gobain Performance Plastics Corp.,
   131 S. Ct. 1325 (2011) .......................................................... 8 & passim

iv

**Federal Cases--(cont'd):**

King v. Marriott Int'l, Inc.,
   337 F.3d 421 (4th Cir. 2003) ..................................................... 2, 29 n.9

Lambert v. Ackerley,
   180 F.3d 997 (9th Cir. 1999) ......................................................... 23 n.7

Langlie v. Onan Corp.,
   192 F.3d 1137 (8th Cir. 1999) ............................................... 22, 22 n.9

Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,
   551 U.S. 877 (2007) ......................................................................... 19

McSharry v. Unumprovident Corp.,
   237 F. Supp. 2d 875 (E.D. Tenn. 2002) ....................................... 23 n.8

Minor v. Bostwick Laboratories,
   669 F.3d 428 (4th Cir. 2012) ....................................................... 22 n.7

Mitchell v. Robert DeMario Jewelry, Inc.,
   361 U.S. 288 (1960) ......................................................................... 17

Moore v. Freeman,
   355 F.3d 558 (6th Cir. 2004) ........................................................... 27

Nicolaou v. Horizon Media, Inc.,
   402 F.3d 325 (2d Cir. 2005) ............................................... 2, 22, 29 n.9

NLRB v. Retail Store Employees Union, Local 876,
   570 F.2d 586 (6th Cir. 1978) ........................................................... 24

NLRB v. Scrivener,
   405 U.S. 117 (1972) ...................................................... 18, 19, 20, 21

North Fork Coal Corp. v. Federal Mine Safety & Health Review Com'n,
   691 F.3d 735 (6th Cir. 2012) ........................................................ 9, 22

**Federal Cases--(cont'):**

Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor,
   992 F.2d 474 (3d Cir. 1993) ........................................................... 22 n.7

Public Citizen v. U.S. Dep't of Justice,
   491 U.S. 440 (1989) ........................................................................25
Republic of Iraq v. Beaty,
   556 U.S. 848 (2009) ........................................................................12

SEC v. Central Illinois Sec. Corp.,
   338 U.S. 96 (1949) ..........................................................................15

Secretary of Labor v. Fitzsimmons,
   805 F.2d 682(7th Cir. 1986) (en banc)..............................................1

Sexton v. Panel Processing, Inc., No. 12-10946,
   912 F. Supp. 2d 457 (E.D. Mich. Oct. 30, 2012)
   (recons. denied Apr. 12, 2013) ........................................... 2 & passim

Shaw v. Delta Air Lines, Inc.,
   463 U.S. 85 (1983) ..........................................................................10

Skidmore v. Swift & Co.,
   323 U.S. 134 (1944) ................................................................... 21, 22

Smiley v. Citibank (South Dakota), N.A.,
   517 U.S. 735 (1996) ..........................................................................9

United States v. Evers,
   669 F.3d 645 (6th Cir. 2012) .............................................................9

**Regulations:**

Sarbanes Oxley Act,
   18 U.S.C. § 1514A............................................................... 23 n.7

Fair Labor Standards Act,
   29 U.S.C. § 215(a)(3) .................................... 22 n.7, 23 n.7, 25, 30 n.9

**Regulations--(cont'):**

Occupational Safety and Health Act,
29 U.S.C. § 660(c). ........................................................................... 22 n.7

Employee Retirement Income Security Act of 1974,
as amended, 29 U.S.C. 1001 et seq:

Section 2, 29 U.S.C. § 1001. ...................................................................1

Section 510, 29 U.S.C. § 1140 ............................................. 1 & passim

Migrant and Seasonal Worker Protection Act,
29 U.S.C. § 1855(a). ........................................................................ 22 n.7

Clean Water Act,
33 U.S.C. § 1367(a) .......................................................................... 22 n.7

Title VII of the Civil Rights Act of 1964;

The Public Health and Welfare:
42 U.S.C. § 2000e-3(a) .............................................................. 26, 30 n.9

Surface Transportation Assistance Act,
49 U.S.C. § 31105(a) ....................................................................... 22 n.7

**Miscellaneous:**

Fed. R. App. P. 29(a) .............................................................................2

S. Rep. 93-127, (1973)
as reprinted in 1974 U.S.C.C.A.N. 4838 ............................................10

119 Cong. Rec. 20044 (1973) ........................................................ 11 n.4

7 Oxford English Dictionary 1010 (2d ed. 1989) ...................................12

EBSA Fact Sheet,
  http://www.dol.gov/ebsa/newsroom/fsFYagencyresults.html. ..................... 21 n.5

## QUESTION PRESENTED

Whether section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, prohibits retaliation against an employee who makes unsolicited complaints to management regarding possible ERISA violations.

## STATEMENT OF INTEREST

The Secretary has primary enforcement and regulatory authority for Title I of the Employee Retirement Income Security Act ("ERISA").  29 U.S.C. § 1001 <u>et seq.</u>  The Secretary's interests include protecting beneficiaries, enforcing fiduciary standards, and ensuring the financial stability of employee benefit assets.  <u>See Secretary of Labor v. Fitzsimmons</u>, 805 F.2d 682, 689-94 (7th Cir. 1986) (en banc).  ERISA section 510, 29 U.S.C. § 1140, complements the Secretary's ERISA enforcement by protecting plan participants from retaliation for exercising their ERISA rights.

The district court granted defendants' motion for summary judgment and held that the employee's unsolicited complaint to management regarding potential ERISA violations was not covered by section 510.  The Secretary's participation in this appeal is important because the issue is novel to the Sixth Circuit, and six courts of appeals are divided on whether the protections of section 510 extend to unsolicited internal complaints.  <u>Compare</u> <u>George v. Junior Achievement of Cent. Ind., Inc.</u>, 694 F.3d 812 (7th Cir. 2012); <u>Anderson v. Elec. Data Sys. Corp.</u>, 11

F.3d 1311 (5th Cir. 1994); <u>Hashimoto v. Bank of Hawaii</u>, 999 F.2d 408 (9th Cir.

1993), <u>with</u> <u>Edwards v. A.H. Cornell & Son Inc.</u>, 610 F.3d 217 (3d Cir. 2010),

<u>Nicolaou v. Horizon Media, Inc.</u>, 402 F.3d 325 (2d Cir. 2005); <u>King v. Marriott</u>

<u>Int'l, Inc.</u>, 337 F.3d 421 (4th Cir. 2003).  If upheld, this decision will negatively

affect ERISA's protection of ERISA plans by inhibiting the willingness of

employees to report ERISA violations to management for fear of retaliation.  The

Secretary therefore has a strong interest in reversal of the district court's decision.

This amicus brief is filed as a matter of right pursuant to Fed. R. App. P.

29(a).

## STATEMENT OF THE CASE

1. <u>Statement of facts.</u>[1]  In 1982, Panel Processing, Inc. and Panel Processing

of Coldwater, Inc. ("Defendants" or the "Company") created an employee stock

ownership plan ("ESOP") and accompanying pension trust ("ESOP's Trust" or

"Trust").  <u>Sexton v. Panel Processing, Inc.</u>, 912 F. Supp. 2d. 457, 461 (E.D. Mich.

2012) (recons. denied Apr. 12, 2013).  The trust agreement states that the ESOP's

assets are controlled by a committee of fiduciaries (the "ESOP Committee"), and

that the ESOP Committee, in turn, controls how company stock held by the Trust

is voted:  "All Company Stock held by the Trust shall be voted by the Trustee in

---

[1] The Statement of Facts is based on the district court's October 30, 2012 findings
of fact.

2

accordance with instructions from the Committee [and] each Participant and/or Beneficiary shall be entitled to direct the voting of any voting shares of Company Stock allocated to his Company Stock Account." <u>Id.</u>

Defendants' corporate bylaws required that a yearly shareholders meeting be held to vote for members of the Company's seven-member board of directors. <u>Id.</u> at 460-61. Each share of capital voting stock, including each share held in the ESOP's Trust, was entitled to one vote in the election of directors. <u>Id.</u>

Plaintiff Brian Sexton, a Panel Processing employee for 27 years, served on both the Company's board of directors and the ESOP Committee. <u>Id.</u> At the 2011 shareholder meeting, the board of director seats held by George LaFleche and Alan Kelsey were up for election. <u>Id.</u> at 461. ESOP participants received a letter in March 2011 stating that LaFleche and Kelsey were nominated for re-election by the board of directors, that their names would appear on the ballot, and that "[b]y placing an (X) next to the name of a nominee, you will be voting the full number of shares allocated to your ESOP account for the person you have selected." <u>Id.</u> at 461-62. About the same time, Plaintiff "learned that a 'grass roots voting campaign' was underway" to elect two of Defendants' employees, Jim Skiba and Robert Fitch, to the board of directors as write-in candidates. <u>Id.</u> at 462.

On Friday, April 29, 2011, shortly before the annual shareholder meeting and election, the board of directors called a meeting and voted Plaintiff and Robert

Karsten out as ESOP trustees.  Id. at 462-63.  According to the meeting minutes,

Eric Smith, the Company's CEO, stated that Plaintiff and Karsten's attempt to seat

two employees as directors of the Company violated the bylaws' requirement that

the board consist of at least three nonemployee directors.  Id. at 463.[2]  Smith's

recommendation to remove Plaintiff and Karsten as ESOP Committee members

and trustees was approved by a 4 to 3 vote.  Id.  The shareholder meeting and

election followed shortly thereafter.  Id.  Write-in candidates Fitch and Skiba each

received more votes than incumbents LaFleche and Kelsey.  Id.

> The following Monday, May 2, Plaintiff emailed Smith, stating in full:
>
> I believe that your actions on Friday in refusing to seat Bob Fitch and Jim
> Skiba as directors of the company and removing Rob Karsten and me as
> Trustees of the ESOP are violations of ERISA and the Michigan
> Corporations Business Act and other state and federal laws. I plan to
> bring these violations to the U.S. Department of Labor and Michigan
> Department of Licensing and Regulatory affairs unless they are
> immediately remedied.

Id.  Plaintiff met with several different attorneys but he did not bring his

complaints to state or federal authorities.  Id. at 463-64.

Defendants terminated Plaintiff six months later, on October 30, 2011.  Id. at

464.  Plaintiff filed a two-count complaint in state court against Defendants in

---

[2] Although uncontested by Plaintiff, the district court's independent review of the
bylaws revealed no such requirement.  Id. at 463 n.5.

January 2012 asserting claims under Michigan's Whistleblower's Protection Act and for breach of an implied employment contract.  Id.  Defendants removed the case to federal district court under the complete preemption doctrine.  Id.

     2.  District court decision.  The district court determined that Plaintiff's state law whistleblower claim was properly removed and preempted by ERISA.  Id. at 465-67.  The court then determined that, even recharacterizing Plaintiff's state law claim as an ERISA section 510 whistleblower claim, Defendants were entitled to summary judgment because Plaintiff failed to state a valid 510 claim.  Id. at 468.

     The district court explained that section 510, as relevant to these facts, only prohibits retaliation against a person for giving information "in any inquiry or proceeding relating to [ERISA]."  Id.  Relying on dictionary definitions of "proceeding" and "inquiry," the court concluded that "[b]y its plain terms, § 510 does not apply to unsolicited information given by an employee [or] cover an isolated accusation" unless the unsolicited information is connected to a request for information.  Id.  Aligning itself with the three circuit courts that have ruled that unsolicited complaints are unprotected, and finding the three other circuit courts holding a contrary position unconvincing, the court held that Plaintiff's email to Smith did not qualify for protection under the plain language of section 510.  Id.

The court explained that Plaintiff's email did not ask for information, section 510 therefore did not apply, and his claim should be dismissed. Id. at 474.[3]

## SUMMARY OF THE ARGUMENT

Section 510 of ERISA is textually ambiguous, neither compelling the district court's "plain" reading of the statute as excluding unsolicited complaints from protection, nor foreclosing a broad reading encompassing the protection of unsolicited complaints. The primary ambiguity centers on the scope of "giv[ing] information . . . in any inquiry," because the term "inquiry" is subject to several interpretations. Given that the language appears in a whistleblower provision, however, it should be construed in favor of the employee, in accordance with Sixth Circuit and Supreme Court precedent. Accordingly, the text of section 510, under which "any inquiry" includes the "action of . . . questioning" or an "employee's grievance" protects Plaintiff's attempt to alert management regarding a potential ERISA violation in this case, as well as other similar unsolicited, internal complaints. See George, 694 F.3d at 815-16.

The district court aptly recognized that section 510's application to "any inquiry" includes both employee- and employer-initiated inquiries, but stated that

---

[3] Upon dismissing the ERISA 510 claim, the court declined to exercise supplemental jurisdiction over Plaintiff's state law breach of implied contract claim. Id. at 474-75. In a subsequent opinion, the court held that Plaintiff's state law breach of implied contract claim was not preempted by ERISA. Id. at 475-78.

employee-initiated inquiry must include a question for section 510 to apply – so that inquiries in the form of a complaint do not trigger the statute's protections. Such hair-splitting is unsupported by the statute and does a disservice to the purposes of anti-retaliation provisions in general and section 510 in particular. Whether or not an employee's complaint is volunteered to management or invited by it, or is in the form of a question or simply asserts a concern about the employer's ERISA plan, the unsolicited expression of the employee's grievance may reasonably be viewed as an "inquiry" worthy of protection from retaliation, either because it involves the "action of . . . questioning" or constitutes the first step toward a more formal investigation. Nothing in the language of section 510 elicits a congressional intent to deny such protection if, rather than investigating and taking any necessary corrective action, the employer's response to the unsolicited complaint is an adverse employment action such as termination of the employee.

Excluding internal employee complaints would thus have a chilling effect on employees' willingness to report violations by incentivizing employers to fire complaining employees immediately. Employees would be forced to wait to give information in response to an employer-initiated inquiry that may never occur, complain to the employer and hope that the employer opens an investigation, or forego initiating an informal internal process in favor of bringing a presumably protected formal charge. Discouraging reporting through retaliatory action would

7

also be detrimental to the Secretary's ERISA enforcement, which depends on employees to report potential ERISA violations.

The Secretary's longstanding and consistent construction of section 510 is not only a reasonable interpretation of an ambiguous provision entitled to judicial deference; it is also the better interpretation because it is consistent with the provision's text, purposes, and practical application.  The Secretary's reading is also supported by the Sixth Circuit's and Supreme Court's approach to interpreting anti-retaliation statutes – which the district court failed to consult.  This Court has endorsed broadly construing anti-retaliation statutes and has held that internal complaints are protected under arguably more restrictive anti-retaliation provisions contained in other federal statutes.  See, e.g., EEOC v. Ohio Edison Co., 7 F.3d 541 (6th Cir. 1993); EEOC v. Romeo Cmty. Schools, 976 F.2d 985, 989-90 (6th Cir.1992).  The Supreme Court, most recently in Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325 (2011), and Crawford v. Metro. Gov't of Nashville, 555 U.S. 271 (2009), also broadly interprets the coverage provisions of whistleblower statutes.  These Sixth Circuit and Supreme Court authorities support those circuit courts that have already held that section 510 protects from retaliation employees who make internal complaints to management, and undermine the restrictive construction of those circuits holding to the contrary.

## ARGUMENT

### Section 510 Protects From Retaliation Employees Who Make Unsolicited Complaints to Management Relating to ERISA

The division in the courts on whether section 510 covers internal employee complaints reflects the statute's inherent ambiguity.  See North Fork Coal Corp. v. Fed. Mine Safety & Health Review Comm'n, 691 F.3d 735, 740 (6th Cir. 2012) ("[T]he existence of divergent court opinions also suggests ambiguity.") (citation omitted); Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 739 (1996). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  United States v. Evers, 669 F.3d 645, 656 (6th Cir. 2012) (citation omitted); see Kasten, 131 S. Ct. at 1330 (interpretation of Title VII anti-retaliation provision "'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis'") (citation omitted).  Contextual and textual analysis supports a reading of section 510's anti-retaliation provision that broadly protects employees who make unsolicited internal complaints to management from retaliation.

     A.    Section 510's Ambiguous Language Should Be Broadly Construed in Favor of Protecting Employees' Informal Complaints.

1.  ERISA section 510, the statute's anti-retaliation provision, states, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to [ERISA].

29 U.S.C. § 1140.  The issue in this case is whether this provision, which this Court has stated is "to be liberally construed," Authier v. Ginsberg, 757 F.2d 796, 801 (6th Cir. 1985) (citation omitted), applies to and protects from retaliation employees who make unsolicited internal complaints.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit [programs]." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983); accord Gregg v. Transp. Workers of Am. Int'l, 343 F.3d 833, 840 (6th Cir. 2003).  "As part of [ERISA's] closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990) (quoting S. Rep. No. 93-127, p. 36 (1973)).  Section 510 is "[p]rominent among these safeguards." Id.; Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 515 (1997) ("In short, '§ 510 helps make promises [of benefits] credible.'") (citation omitted).  Thus, "Congress viewed [section 510] as a crucial part of ERISA because, without it, employers would be able to

circumvent the provision of promised benefits." Ingersoll-Rand Co., 498 U.S. at 143; cf. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006) (construing Title VII's anti-retaliation provision to provide "broad protection from retaliation" because the statute "depends for its enforcement upon the cooperation of employees").[4]

2.   The Secretary's reading of Section 510 as protecting unsolicited complaints is the better interpretation of a provision whose literal text "is anything but . . . unambiguous." George, 694 F.3d at 814; Edwards, 610 F.3d at 226 (Cowen, J., dissenting) ("the statutory language used in this anti-retaliation provision is ambiguous") (emphasis in original).  The primary ambiguity concerns whether the scope of "inquiry" within the phrase "giv[ing] information . . . in any inquiry" encompasses an unsolicited complaint to management.  The answer to this question determines whether ERISA protects a person who brings concerns to the employer or plan trustees about an ERISA plan, and is met with retaliation – rather than an investigation responding to those concerns.

---

[4]  This Court has stated that section 510 "creates a retaliatory action similar to the civil rights laws," Authier, 757 F.2d at 801 (citation omitted), and legislative history indicates that Congress intended employees to possess the same broad protection available under Title VII.  119 Cong. Rec. 20044 (1973) (section 510 "gives the employee the same right[s]" and "provides a remedy for any person fired such as is provided for a person discriminated against because of race or sex, for example."); but see Sexton, 912 F. Supp. 2d at 468 (supporting reading of section 510 by contrasting its language with Title VII's anti-retaliation provision).

ERISA does not define the term "inquiry." "Where as here, the 'statute does not define one of its terms[,] it is customary to look to the dictionary for a definition' . . . 'taking into consideration the text and subject-matter relative to which they are employed.'" <u>Casias v. Wal-Mart Stores, Inc.</u>, 695 F.3d 428, 435 (6th Cir. 2012). The dictionary definitions of "inquiry" are inconclusive, however, because they "include both formal and informal understandings of 'inquiry.'" <u>George</u>, 694 F.3d at 815. Thus, "inquiry" might "mean something official, such as the investigation that the Department of Labor conducts," but "[f]or the purpose of [Section 510] the apt informal usage of 'inquiry might be '[t]he action of asking or questioning,'" including "an employee's grievance . . . whether or not the employer solicited information." <u>Id.</u> at 815-16 (quoting 7 Oxford English Dictionary 1010 (2d ed. 1989)).

ERISA does not refer merely to formal proceedings, but more expansively to "any inquiry or proceeding." In the context of section 510, the broad meaning of the word "inquiry" is reinforced by its juxtaposition with the narrower term "proceeding," which the district court agreed connotes a more formal setting. <u>Sexton</u>, 912 F. Supp. 2d at 468. Congress made a deliberate decision not to restrict 510 solely to formal "proceedings," but rather to encompass "any inquiry," and it would be inappropriate to read "inquiry" as mere surplusage or "any" as indicating anything less than the broadest possible construction of that term. <u>See</u> <u>Republic of</u>

12

Iraq v. Beaty, 556 U.S. 848, 856 (2009) ("Of course the word 'any' . . . has an 'expansive meaning.'") (citation omitted).

Narrowly defining the statutory term to exclude informal complaints from an employee to management would fail to take into account the "subject matter relative to which [the term is] employed," Casias, 695 F.3d at 436, and run afoul of the Supreme Court's "warn[ing] against discarding definitions that would make sense in the statutory context." George, 694 F.3d at 815 (citing Kasten, 131 S. Ct. at 1336).

A statute's "antiretaliation provision seeks to secure [substantive rights] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington Northern, 548 U.S. at 63. Accordingly, it is generally understood that:

> Laws protecting whistleblowers are meant to encourage employees to report illegal practices without fear of reprisal by their employers. These statutes generally use broad language and cover a variety of whistleblowing activities. Accordingly, when the meaning of the statute is unclear from its text, courts tend to construe it broadly, in favor of protecting the whistleblower. This is often the best way to avoid a nonsensical result and "to effectuate the underlying purposes of the law."

Haley v. Retsinas, 138 F.3d 1245, 1250 (8th Cir. 1998) (citation omitted); accord George, 694 F.3d at 814; Hill v. Mr. Money Fin. Co., 309 Fed. App'x 950, 961 (6th Cir. 2009). Accordingly, in Crawford, the Supreme Court looked to Title VII's "primary objective of avoiding harm to employees" when it considered the "limits"

of the phrase at issue in the statute's anti-retaliation provision.  555 U.S. at 277-79 (citations omitted).  Similarly, reading the "inquiry" clause of section 510 to its definitional limits and in light of the statute's protective purposes supports a construction of "any inquiry" that includes unsolicited internal complaints to management, in that it entails "the action of . . . questioning" or presenting a "grievance" regarding conduct that may violate ERISA.  George, 694 F.3d at 815-16.

3.  As a matter of plain language, "giv[ing] information" in an inquiry or proceeding is not limited to asking questions.  The district court, however, decided that only certain unsolicited complaints – those constituting a request for information – constitute a covered "inquiry."  Sexton, 912 F. Supp. 2d at 974.  Accordingly, it agreed with George that "the only reasonable interpretation of § 510 that does not require reading limitations into the statute" includes "an 'inquiry' initiated by either the employee or the employer."  Id.  But the court imposed its own limiting principle by further positing that section 510 nevertheless requires employees to have "solicited" or "ask[ed] for information" in order to have "giv[en] information . . . in any inquiry."  Id.  Such a requirement lacks any textual basis:  section 510 does not specify that "giving information," 29 U.S.C. § 1140, must include soliciting information or framing the information given as a question.  The district court's extra-textual interpretation of the phrase "giving information"

14

erroneously reads words <u>into</u> Section 510 that restrict the facially broad provision. Congress made clear that it intended to protect all ERISA-related communication from plan participants by not only using the term "testify" but also the open-ended phrase "giving information."

In addition, it would make little sense, particularly in light of the remedial purposes of ERISA, to interpret the phrase "any inquiry" broadly to include both employee- and employer-initiated inquiries, but to interpret the phrase "giving information" narrowly as including questions but excluding declarative complaints. <u>See, e.g.</u>, <u>SEC v. Central Illinois Sec. Corp.</u>, 338 U.S. 96, 123 (1949) ("Both sections are parts of the same statute, designed to give effect to the same legislative policies."). Similarly, there is also no logical reason why Congress would have legislated retaliation against an employee "giving information" in the form of a question to be unlawful, but have been indifferent to retaliation against a person "giving information" in any other manner.

4.  Practical considerations support the Secretary's reading.  Excluding internal employee-initiated inquiries gives employers a perverse incentive not to look into the validity of employee complaints about their ERISA-covered plans – and instead encourages the employer to terminate or take other adverse action against the employee immediately.  <u>See</u> <u>Edwards</u>, 610 F.3d at 226 (Cowen, J., dissenting).  Contrary to its purpose, interpreting section 510 in this manner

15

advantages the employer who terminates a whistleblowing employee without further inquiry, while holding liable only the employer who retaliates after responding to an employee's complaint with an investigation into its substance. See Coomer v. Bethesda Hosp., Inc., 370 F.3d 499, 509 (6th Cir. 2004) ("prohibitions of § 510 'were aimed primarily at preventing unscrupulous employers from discharging or harassing their employees'") (citation omitted).

By the same token, failing to protect unsolicited complaints or inquiries from employers' preemptive retaliation chills employees' and fiduciaries' willingness to raise concerns and resolve problems related to their employee benefit plans. See Crawford, 555 U.S. at 279 ("fear of retaliation is the leading reason why people stay silent instead of voicing their concerns") (internal quotations and citations omitted). Fiduciaries who are also employees, such as Plaintiff here, are in the untenable position of risking their jobs if, by fulfilling their statutory obligations to monitor plans and investigate fiduciary prudence, they provoke their bosses to retaliation. The practical reality is that employees and fiduciaries will hardly be forthcoming about potential ERISA violations if they are unprotected against retaliation for disclosing such information. See, e.g., Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 292 (1960) ("For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees to quietly accept [unlawfulness].").

Moreover, if internal employee-initiated inquiries and complaints are not protected by section 510, then an employee or fiduciary who wants to raise concerns regarding potential ERISA violations – but who also wishes to remain protected by the statute's anti-retaliation provision – has three undesirable options. First, the employee can simply wait to respond to a "request for information" from management or other supervisory personnel after they have initiated their own inquiry. This scenario plainly frustrates section 510's whistleblowing and corrective purposes because it depends on the employer initiating action, which may never occur. Second, the employee can complain internally to management and then hope that management's response is to initiate a formal inquiry or proceeding, and not to take an adverse employment action against the employee, such as termination. Third, the employee can file a formal complaint with the Department of Labor, thereby causing a proceeding or inquiry to occur where he can testify or give information under Section 510. But this option contravenes established congressional purposes favoring internal company resolution of ERISA disputes that is far more cost effective than the employee's pursuit of a government investigation or litigation. See Kasten, 131 S. Ct. at 1334 (not protecting internal complaints "discourage[s] the use of desirable informal workplace grievance procedures.").

5.  Any commonsensical construction of "any inquiry" should recognize that, at a minimum, an unsolicited employee complaint is the necessary first step of any complaint-driven inquiry.  <u>Hashimoto</u>, 999 F.2d at 411 ("The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan.").  This is particularly true where, as here, Plaintiff was himself a plan fiduciary and complained to another plan fiduciary who had an obligation to investigate reasonable allegations of misconduct with respect to an employee benefit plan.  <u>See</u> <u>Authier</u>, 757 F.2d at 798-99 (recognizing that plaintiff's ERISA duties included pursuing concerns regarding conduct affecting ERISA plan).  The plan fiduciary should not be permitted to circumvent section 510 liability by failing to institute an "inquiry or proceeding" that he had a fiduciary obligation to conduct.

In <u>NLRB v. Scrivener</u>, 405 U.S. 117 (1972), the Supreme Court held that the National Labor Relation Act's anti-retaliation provision, which prohibits retaliation against an employee who has "filed charges or given testimony," protects employees who participate in a preliminary investigation that does not result in the filing of charges or testimony.  <u>Id.</u> at 123-24.  The Court explained that protecting employees who participate in preliminary stages of an investigative process "squares with the practicalities" of that process, and that "[w]hich employees

18

receive statutory protection should not turn on . . . events that have no relation to the need for protection." Id.

The same reasoning applies here: protecting employees "giving information" related to ERISA only if a formal investigation or inquiry ensues leaves an inexplicable gap in the statute's protective reach for reasons that are neither tethered to the statutory text nor related to the need for protection. An employee's complaint to management, fiduciaries, or others with a duty to inquire into allegations of wrongdoing may prompt a searching inquiry or investigation, but the employee should still be protected from retaliation if it does not. It defeats the purpose of an anti-retaliation provision – and indeed becomes a trap for the unwary – if it is deemed not to apply to the most obvious and blatant circumstance where retaliation is likely to occur. Cf. Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 904 (2007) (holding that statutory interpretation is "flawed" if it "creat[es] legal distinctions that operate as traps for the unwary").

Here, it sufficed to invoke section 510's protections that Plaintiff complained to management, without having also reported his complaint to state or federal authorities: "If at the end of an investigation the initial complaint would be considered part of the 'inquiry,'" that complaint should not "be excluded just because the investigation halts early [perhaps] because the employer made good the injury." George, 694 F.3d at 817. Accordingly, because the statutory trigger is

merely "any inquiry," the relevant questions in this context are whether the employer reasonably should have understood that the employee was flagging conduct made unlawful by ERISA, and, correspondingly, whether the employees providing unsolicited information regarding potential unlawful ERISA conduct had a "need for protection" under the circumstances.  Scrivener, 405 U.S. at 124. When, as here, those circumstances are present, section 510 protects the employee against retaliation regardless of whether the employee or employer takes further action to address the ERISA concern.

6.  In contrast, it makes scant sense to conclude, as the district court suggests a proper construction of ERISA requires, that if Plaintiff had framed his email as a question or even just ended with a question mark, then section 510 applies – but that his failure to do so eliminates the statutory protection.  Information may be given without being asked, in anticipation of such request, or because the government agency, company, or plan is presumed generally to invite such information in order to carry out their responsibilities.  Someone volunteering information without being asked would reasonably expect to be afforded the same protections as someone who does the same thing after being asked.

Moreover, a narrow reading of section 510 undermines the Secretary's enforcement. Under the district court's interpretation, an unsolicited complaint to the government could pose the same coverage question respecting the scope of

"any inquiry."  Employees are encouraged to report ERISA violations to the

Department of Labor.  In addition to a web page for submitting online complaints,

the Department maintains national and field offices where it receives thousands of

phone calls each year on its toll-free hotline concerning alleged ERISA violations.

This is how the Secretary learns of many ERISA violations, in light of the vast size

of the plan universe relative to investigative resources.[5]  Without protection from

retaliation, employees could not (or would not) alert the Secretary, and this source

of information as to possible ERISA violations would substantially diminish.  See

Kasten, 131 S. Ct. at 1335 (weighing effect of statutory interpretation on

Secretary's Fair Labor Standards Act enforcement); see also Scrivener, 405 U.S. at

122 (interpreting NLRA to "prevent [NLRB's] channels of information from being

dried up").

    7.  The Secretary's longstanding and considered views are entitled to

deference.  See Skidmore v. Swift & Co., 323 U.S. 134 (1944); see also Kasten,

131 S. Ct. at 1335 (granting Skidmore deference to the Secretary); Auer v.

------

[5] In 2012 alone, the Employee Benefits Security Administration ("EBSA"), the
Departmental entity responsible for ERISA enforcement, had oversight authority
for nearly 707,000 retirement plans, 2.3 million health plans, and a similar number
of other welfare plans.
http://www.dol.gov/ebsa/newsroom/fsFYagencyresults.html (EBSA Fact Sheet)
(last visited July 19, 2013).  Also in 2012, EBSA closed 3,566 civil and 318
criminal investigations.  Id.

Robbins, 519 U.S. 452, 462 (1997) (deferring to Secretary's interpretations set forth in amicus briefs); North Fork, 691 F3d at 742-43; Chao v. Occupations Safety & Health Review Comm'n, 540 F.3d 519, 523-24 (6th Cir. 2008) (Secretary's interpretation of statute through informal medium rather than notice and comment rulemaking entitled to Skidmore deference).  Questions concerning prevention of retaliation against employees for making informal complaints are critical to ERISA enforcement, and the Secretary has carefully considered those questions over a long period of time.  In fact, the Secretary is addressing the ERISA-specific issue presented in the case for the fifth time, having previously submitted amicus briefs on this issue in George, Edwards, Nicolaou, and Langlie v. Onan Corp., 192 F.3d 1137 (8th Cir. 1999).[6]  The Secretary also has extensive experience in administering other federal employment-related and whistleblower statutes, including briefing the coverage of internal complaints under a number of these statutes.[7]  Consequently, all the factors for affording the Secretary's interpretation of section 510 judicial deference have been amply met.

---

[6] The Eighth Circuit did not decide the issue in Langlie.  See id. at 1141.

[7] Among the numerous whistleblower statutes that the Secretary administers or enforces are: 18 U.S.C. § 1514A (Sarbanes Oxley Act); 29 U.S.C. § 215(a) (3) (Fair Labor Standards Act); id. § 660(c) (Occupational Safety and Health Act); id. § 1855(a) (Migrant and Seasonal Agricultural Worker Protection Act); 33 U.S.C. § 1367(a) (Clean Water Act); 49 U.S.C. § 31105(a) (Surface Transportation Assistance Act).  Some examples of cases in which the Secretary has briefed the

B.    The Secretary's Construction of Section 510 is Consistent with Sixth Circuit and Supreme Court Precedents Broadly Interpreting the Coverage of Other Anti-Retaliation Statutes, and with the Most Recent and Better Reasoned Court of Appeals Decision Regarding ERISA's Protection of Unsolicited Complaints.

The Supreme Court has instructed that interpretation of an anti-retaliation provision "'depends upon . . . consulting any precedents or authorities that inform the analysis.'" Kasten, 131 S. Ct. at 1330 (citation omitted). While cognizant of the split in the circuits on the question presented, the district court in this case failed to heed this instruction in significant respect.[8]

1. Sixth Circuit Precedent. This Court has routinely interpreted retaliation provisions in employment statutes in a manner that "effectuate[s] Congress's clear purpose in proscribing retaliatory activity [and] the policy behind the statute." Ohio Edison Co., 7 F.3d at 545. In Ohio Edison, the Sixth Circuit held that the phrase "he has opposed any practice" contained in Title VII should be broadly

_____

coverage of internal complaints or related questions in the past twenty years are: Minor v. Bostwick Laboratories, 669 F.3d 428 (4th Cir. 2012); Lambert v. Ackerley, 180 F.3d 997 (9th Cir. 1999); Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor, 992 F.2d 474 (3d Cir. 1993).

[8] Although a novel question in this Court, at least two other district courts from the circuit have interpreted section 510 in the manner advanced by the Secretary. Dunn v. ELCO Enters., Inc., 2006 WL 1195867, at *4-5 (E.D. Mich. May 4, 2006) ("the activity protected under section 510 includes internal complaints made by an employee"); McSharry v. Unumprovident Corp., 237 F. Supp. 2d 875 (E.D. Tenn. 2002) (state law whistleblower claims based on employee's refusal to participate in alleged ERISA violations and complaints to supervisors preempted by ERISA).

construed to mean "he or his representative has opposed any practice" because "it is consistent with the objective of the Act which is to prohibit retaliation against protected activity."  Id. ("restrictive interpretation . . . would allow employer to retaliate with impunity . . . and would frustrate the Act's purpose to prevent retaliation"); see Dunlop v. Carriage Carpet Co., 548 F.2d 139, 142, 147 (6th Cir. 1977) (same, regarding FLSA); NLRB v. Retail Store Employees Union, Local 876, 570 F.2d 586, 590 (6th Cir. 1978) (same, regarding NLRA); see also Hayes v. City of Memphis, 23 Fed. App'x 529, 531 (6th Cir. 2001).

Additionally, in EEOC v. Romeo Community Schools the Sixth Circuit held that the anti-retaliation provisions of the FLSA can be triggered by informal complaints.  976 F.2d at 989-90.  FLSA's anti-retaliation provision applies where an "employee has filed any complaint or instituted any proceeding under or related to [FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  FLSA § 15(a)(3), 29 U.S.C. § 215(a)(3).  In Romeo, the plaintiff alleged she was retaliated against for complaining of unlawful sex discrimination and telling her employer she believed they were breaking the law by paying her lower wages than her male counterparts. 976 F.2d at 987, 989.  Although the district court dismissed the plaintiff's claim because the alleged retaliatory acts occurred before formal proceedings were instituted, this Court reversed and held that the plaintiff's pre-proceeding

24

complaints "effectively set forth a claim of retaliation" under FLSA section 15(a)(3).  Id. at 989-90.

The Sixth Circuit took a similar approach in its determination of whether the Energy Reorganization Act ("ERA"), which is "patterned after other whistleblower statutes" to protect workers from retaliatory discharge for reporting nuclear safety concerns, applied to internal reports.  Am. Nuclear Resources, Inc. v. U.S. Dep't of Labor, 134 F.3d 1292, 1294-95 (6th Cir. 1992).  The ERA was amended in 1992, but "the old version of [the Act] fail[ed] to protect internal reports explicitly."  Id. at 1295 & n.3.  This Court held, however, that "[a]n employee who is retaliated against for filing internal reports concerning violations of nuclear regulatory laws has recourse under the [pre-1992] ERA."  Jones v. Tennessee Valley Auth., 948 F.2d 258, 264 (6th Cir. 1991).  The Court "protect[ed] internal reports to advance the statute's policy goals" where a narrower application of the ERA would have denied such relief.  Am. Nuclear Resources, 134 F.3d at 1295; see Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 454-55 (1989) (avoiding "literal reading of a statutory term [that] would compel an odd result").

2.  Supreme Court Precedent.  The Sixth Circuit's approach is in line with the Supreme Court's generally broad approach in interpreting the coverage provisions of statutes meant to protect employees against employer retaliation for protected activity.  In Crawford, the Court interpreted the "opposition" clause of

25

Title VII, which makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by [Title VII], § 2000e-3(a)."  555 U.S. at 274.  The Court rejected a narrow definition of "oppose" in favor of a broader reading of the term, holding that "a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question."  Id. at 277-78.

Thus, the Supreme Court treated unsolicited employee complaints and employee responses to an employer's request for information as both protected. Likewise, nothing in section 510 requires the "freakish" result that employees who report potential ERISA violations on their own initiative (whether in the form of a statement or question) are not protected by ERISA but employees who report the same violations in the same words in response to a question from management are protected.  Indeed, the purported distinction in the two acts becomes completely blurred when, for instance, the response to a request goes beyond the scope of the request, or where the workplace encourages employees to come forward with complaints or engage in informal dispute resolution.

More recently, in <u>Kasten</u>, the Supreme Court determined whether the anti-retaliation provision of the FLSA, which prohibits, <u>inter alia</u>, retaliation "against any employee because such employee has filed any complaint," protects oral, as well as written, internal complaints.  131 S. Ct. at 1329.  The Court held that the term "filed" was ambiguous, and rested its holding on "[s]everal functional considerations," including not wanting to undermine basic FLSA objectives and enforcement.  <u>Id.</u> at 1333.  The Court further stressed that limiting protection to written complaints could "take the needed flexibility from those charged with the Act's enforcement" by "prevent[ing] Government agencies from using [various] oral methods for receiving complaints."  <u>Id.</u> at 1334; <u>see</u> <u>Moore v. Freeman</u>, 355 F.3d 558, 562-63 (6th Cir. 2004) (holding that FLSA complaint can be "filed" orally).  As discussed <u>supra</u>, many of these same considerations exist with, and readily transfer to, section 510.  Accordingly, not only is the Secretary's reading of section 510 textually sound, but the "precedents and authorities that inform the analysis" favor the Secretary's view.  <u>Kasten</u>, 131 S. Ct. at 1331.

3. <u>Other Circuit Precedent</u>.  The most recent circuit court opinion on the question presented is the Seventh Circuit's decision in <u>George</u>.  There, Chief Judge Easterbrook acknowledged the Supreme Court's instructions from <u>Kasten</u> and <u>Crawford</u> that "[w]hen dealing with ambiguous anti-retaliation provisions, we are supposed to resolve the ambiguity in favor of protecting employees."  <u>George</u> 694

F.3d at 814.  Accordingly, George held that "any inquiry" under section 510 can be either "the action . . . of questioning" or a "grievance," and that "an employee's grievance is within § 510's scope whether or not the employer solicited information."  Id. at 815-17.   The Seventh Circuit's closely-reasoned opinion hews closely to the statutory text while adhering to the general admonition to construe anti-retaliation provisions broadly in light of the statutory purposes.  See id. at 814-16 (parsing statutory text while mindful of Supreme Court's instruction to construe coverage provisions in favor of employee).

In Hashimoto, the Ninth Circuit also concluded that section 510 protects employees who raise informal complaints and objections to management.  999 F.2d at 411.  The case involved a plaintiff who alleged she was discharged after making unsolicited complaints to management about alleged ERISA violations.  Id. at 409-410.  Id.  In holding that section 510 protects employees in plaintiff's position, the Ninth Circuit explained:

> The normal first step in giving information or testifying in any way that might tempt an employer to discharge one would be to present the problem first to the responsible managers of the ERISA plan.  If one is then discharged for raising the problem, the process of giving information or testifying is interrupted at its start: anticipatory discharge discourages the whistle blower before the whistle is blown.

Id. at 411.

Anderson in the Fifth Circuit, which similarly held that section 510 protects persons who make unsolicited ERISA-related complaints to management, is the

case that most closely resembles this one factually. 11 F.3d at 1314. The plaintiff

in Anderson alleged that he was demoted and discharged because he refused to

commit acts he believed violated ERISA and because he reported potential ERISA

violations to management. The court determined that the plaintiff's allegation that

he was discharged because he reported ERISA violations to management and

refused to commit such violations fell "squarely within the ambit of ERISA § 510."

Id. at 1314.[9]

This Court should likewise protect unsolicited employee complaints to

management under section 510, because such construction is consistent with

Supreme Court and the Sixth Circuit's treatment of whistleblower provisions

generally, as well as being both permissible textually and contextually under the

section's language and persuasive as a fulfillment of the statute's policy goals.

---

[9] The Second, Third, and Fourth Circuits have taken a more restricted view of
section 510. See Edwards, 610 F.3d at 223 ("complaints themselves, without
more, do not constitute an inquiry."); Nicolaou, 402 F.3d at 329-30 (employee
must show that management requested information regarding a potential ERISA
violation to avail herself of section 510); King, 337 F.3d at 427 (section 510 is
limited to legal or administrative proceedings and does not protect an employee
who makes complaints to her supervisors) but see Edwards, 610 F.3d at 226-31
(Cowen, J., dissenting) (majority's interpretation of "inquiry" is "questionable at
best"). However, all of these cases were issued without the benefit of the Supreme
Court's Kasten decision and only Edwards was issued after Crawford. They are
also inconsistent with the Sixth Circuit's broad interpretation of whistleblower
provisions in FLSA, ERA, Title VII, and NLRA.

## CONCLUSION

For the reasons stated above, the district court's opinion should be reversed.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor
Plan Benefits Security Division

NATHANIEL I. SPILLER
Counsel for Appellate and
Special Litigation
Plan Benefits Security Division

/s/ Stephen Silverman
STEPHEN SILVERMAN
Trial Attorney
Plan Benefits Security Division
U.S. Department of Labor
Room N-4611
200 Constitution Avenue, N.W.
Washington, D.C. 20210
(202) 693-5623 – Phone
(202) 693-5610 – Fax
silverman.stephen@dol.gov

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that the foregoing brief complies with the type-volume limitations provided in Fed. R. App. P. 32(a).  The foregoing brief contains 6922 words of Times New Roman (14 point) regular type.  The word processing software used to prepare this brief was Microsoft Office Word 2010.


/s/     Stephen Silverman
Attorney for U. S. Department of Labor, Plan Benefits Security Division
Dated: July 19, 2013

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2013, copies of the Brief were served upon the parties by operation of the Sixth Circuit's CM/ECF system.

s/ Stephen Silverman
Stephen Silverman
Trial Attorney
Plan Benefits Security Division
U.S. Department of Labor
Room N-4611
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) 693-5623 – Phone
(202) 693-5610 – Fax
silverman.stephen@dol.gov