Sexton sued the company in Michigan state court for violating the State's Whistleblower Protection Act and for breaching his employment contract. One might think that, when a Michigan plaintiff sues a Michigan defendant under Michigan law in a Michigan court, the case would stay there. But the company invoked complete preemption, a doctrine that converts state law claims "within the scope of [ERISA's] civil enforcement provisions" into federal claims. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987). Under this banner, the company recharacterized Sexton's state whistleblower claim as an ERISA claim. *See* 29 U.S.C. § 1140. It then removed the transfigured lawsuit to federal court.

Once in federal court, Sexton did not challenge the company's removal of the case or its use of complete preemption. Sexton and Panel Processing instead litigated the case as though Sexton had raised a claim under ERISA. The district court granted summary judgment to the company on this ERISA claim, and it declined supplemental jurisdiction over Sexton's breach-of-contract claim.

II.

On appeal, Sexton does not contest the district court's application of complete preemption to Sexton's claim or otherwise attempt to resurrect his claim under Michigan's Whistleblower Protection Act. Under our case law, true enough, the doctrine of complete preemption goes to the subject matter jurisdiction of the court. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc). But we are satisfied, just as the parties and the district court were satisfied, that the company properly invoked the doctrine here.

III.

Sexton [*v*] [(supported by the Secretary of Labor)] instead takes aim at the district court's rejection of his claim under ERISA. ✓ The relevant law says in relevant part: "It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to [the Act]." 29 U.S.C. § 1140. Both parties take as a given (for now) that the company fired Sexton because of his email to the chairman of the board.

oral complaints to the law's administration. *Id.* at 1333–34. Far from licensing free-form interpretation of anti-retaliation laws, *Kasten* confirms the primacy of the statutory text.

*Crawford v. Metropolitan Government of Nashville* is of a piece. 555 U.S. 271 (2009). It held that Title VII's *opposition* clause protects employees who oppose unlawful practices, regardless of whether they speak on their own initiative or in response to employer questions. The result does not help Sexton, because (unlike the law invoked in this case) Title VII's opposition clause does not distinguish inquiries and proceedings from other settings. Nor does the reasoning help him, because *Crawford* turned on the "ordinary meaning" of the opposition clause, *id.* at 276, not on any special interpretive rule for anti-retaliation statutes. The dissent for its part takes up *Crawford*'s observation that "nothing in [Title VII's opposition clause] requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the words when her boss asks a question." *Id.* at 277–78. The dissent reasons that it makes no sense to distinguish complaints made during questioning from complaints made without questioning, prompting the conclusion that § 1140 protects all complaints whatsoever. But the conclusion does not follow from the premise. The dissent overlooks another possibility, one that both avoids odd results *and* stays within the words of the text: Interpret "inquiry" to mean "formal investigation" rather than "question." That indeed is what the Fourth Circuit does. *See King v. Marriott Int'l, Inc.*, 337 F.3d 421, 427 (4th Cir. 2003).

Sexton, the Secretary and the dissent also cast about for support in our circuit's precedents. The decisions they reel in, *see, e.g., EEOC v. Ohio Edison Co.*, 7 F.3d 541 (6th Cir. 1993); *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985 (6th Cir. 1992), do not help them. Each case interprets a statute that already contains an opposition clause to protect a form of opposition. None authorizes a court to create an opposition clause out of nothing.

The same is true of out-of-circuit decisions. Every relevant *holding* hurts Sexton's position. The Third and Fourth Circuits have both held that § 1140 does not cover complaints like Sexton's. *See Edwards v. A.H. Cornell & Son*, 610 F.3d 217, 225–26 (3d Cir. 2010) (concluding that "unsolicited internal complaints are not protected under [§ 1140] based on a plain reading of that provision's terms"); *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 428 (4th Cir.